Mr. Gannon. Mr. Chief Justice, and may it please the Court, with respect to the original question presented, if the Court reaches it in this case, the government's position is, as Mr. Rayner has just explained in the first case this morning, Section 1231A.6 does not compel the bond-hearing regime imposed by the Ninth Circuit, any more than the Third Circuit, after the removal period, not as a matter of the statute's text, nor as a matter  of the constitutional question, the courts below could not enter class-wide injunctive relief, because in Section 1252.f.1, Congress has expressly limited the lower court's jurisdiction to enjoin or restrain the operation of certain provisions of the INA, including those governing post-order custody. That limitation applies regardless of the nature of the action or claim, so it is not limited to constitutional challenges, and any such limit would only implausible statutory constructions under the guise of constitutional avoidance. Moreover, the statute's exception for orders granting relief to an individual alien against whom removal proceedings have been initiated does not permit class-wide relief simply because every current or future member of a class could have qualified for individual relief. That would be inconsistent with Congress's concern about allowing lower courts to remake the immigration system under readings that have not been adopted by this Court, and this Court has stated as much about the exception in 1252.f.1 three times, most recently in Jennings, as the Third Circuit recognized in its decision two weeks ago in Brito. I welcome the Court's questions. Ms. Gannon, as I understand your jurisdictional argument, it really all relies on the idea that enjoin means both stop and require. Is that correct? It depends on that with respect to enjoin. Separately, if the question of the — Putting aside the individual issue. No, even setting aside the exception, if you just said that it means that we have to enforce the statute, if you go to their second argument, the argument that the Court said below, that the operation of the provisions means that we can't be compelled to do this — we can be compelled to do the statute, that would still be compulsion under — that's the way we read that, yes. Okay. I take that as a gloss on what I said. Yes. Okay. So I'm just going to — I mean, of course you're right that if you look up the suggests not stop, but something like order or require or something like that. But I'm just looking at this phrase, enjoin or restrain the operation of certain statutory provisions, and let me give you some examples about what the word enjoin would mean in similar phrases. The plaintiff seeks to enjoin enforcement of the law. Does that mean stop? I think it's hard to tell from that context whether it means that they seek to have the law enforced. Really? It's the plaintiff seeks to enforce the law as opposed to the plaintiff seeks to enjoin enforcement of the law? Well, I think — Doesn't that obviously mean stop enforcement? No. If the plaintiff is saying you are not enforcing the law, I want an injunction that says enforce the law, then the plaintiff would be asking for someone to be enjoined to enforce the law. Okay. Let's go a few more. I mean, because to me, the plaintiff seeks to enjoin enforcement of the law, it means like stop enforcing the law. Sometimes it does. The plaintiff seeks to enjoin — excuse me, the agency seeks to enjoin the aiding and abetting of securities law violations. In that context, I think it's clear that the agency is trying to stop something that it would consider to be a violation of the law. The federal court lacks jurisdiction to enjoin state court proceedings. I think that they could neither compel state court proceedings nor stop state court proceedings in that instance. That's really what it would mean? Just like, really? Either one? Yeah, I think — it could not compel a state court to have proceedings. If it is — many of those types of statutes that are limiting interference with another court system, like the Tax Injunction Act, you know, say that the government — say that a district court shall not enjoin, suspend, or restrain the collection of state taxes. Okay, now — And I think that means that they can't order collection of taxes any more than it says that they can order the stopping of collection of state taxes. Now let's say that — I mean, I guess, look, I just get the point. It just seems to me that the ordinary way of reading any of those three would be, oh, you're obviously looking to stop something. But let's add some stuff. Because this statute says enjoin or restrain the operation of certain statutory provisions. So you're essentially reading it to say the court lacks jurisdiction to stop or require or restrain. Now that would be sort of odd, wouldn't it? I think that — But enjoin or restrain — stop or restrain, that's a sensible thing to say. I — Stop or require or restrain, that's not a sensible thing to say. Well, I think, Justice Kagan, that in this context, the two phrases, enjoin or restrain, are often thought of in terms of an injunction versus a stay. I agree with you that if you just took these two words in isolation, you could read it as you just said, that one would be affirmative, one would be negative. But as we've been discussing, there are contexts in which enjoin actually means — you know, it can mean either. And in the adjacent provision, F2, enjoin clearly is about stopping removal. Right. So you got exactly where I was going. I mean, I hate to keep piling on. But now, in addition to, like, just what this enjoin usually means in similar sentences, plus the fact that restrain is in here, plus there's this provision right next door, 1252 F2. No court shall enjoin the removal of any alien pursuant to a final order unless the alien shows blah, blah, blah. Now, that obviously means stop, right? Doesn't mean require. Yes. In that context, because we know — this is like your SEC example — but we know that the noncitizen in that context would be asking for only one direction of relief. Yeah. So I just have to say, like, the sort of normal meaning of enjoin in similar kinds of sentences, the fact that there is a restrain right next to the word enjoin, and the fact that 1252 F2, which obviously only means stop, is right next to 1252 F1. Put all those things together, I don't know, it seems like you have a tough road to hoe here. Well, and so if I can go back to the gloss that I confused you with at the very beginning here, even assuming that this is about only stopping or only compelling whichever direction you want to pick, we think that the phrase, the operation of the provisions, is a reference not just to the statute itself, but to the way that they are being carried out. So in this instance, the injunction is clearly changing how the statute operates. And the operation of the provisions, they only operate through the executive's actions. The cross-reference provisions are the sections of the INA that deal with inspection, apprehension, exclusion, and removal. None of those things have any abstract content in the world that is anything other than the way the government enforces them. And so we think here that if you want to say that you can't force, that the enjoin only has the one direction meaning, it would still be a problem if the court is enjoining the operation of the statute as the government carries it out. And it's not just that we think that the phrase operation is synonymous with implementation in this context, but if you look at the exception, it also says that this is other than with respect to the application of such provisions to an individual alien. And so again, the exception is about the way these are being applied. And so we think that in this context, consistent with Congress's recognition that this is regardless of the nature of the action or claim. I'm only half sure I understand your argument, Mr. Gannon, which I'm sure is my fault, not yours. But if I understand the normal natural meaning of operation, as something like the act of operating, the act of functioning, stop the operating of the statute. Stop the functioning. Right? And the functioning is what the executive branch is doing to carry it out. And we think Congress was concerned about having lower courts order the executive to stop operating the statute. To say you can't do that provision the way you're doing it. We think the statute generally was concerned. Right. But wouldn't that suggest that courts can't prohibit the functioning of the statute, right? But they can enjoin agency operation that's in derogation of the statute. You can't, you know, so there's still some meaning here, and there's still something that a court has no jurisdiction over, because the court cannot prohibit the functioning of a statute. But what is also true is that the court can prohibit agency action that's in violation of the statute. But I wouldn't read the statute that far here, in part because Congress left in the protection for individual cases. And so we know that what Congress is concerned about here is the distinction between a programmatic challenge and an individual challenge. Mr. Gannon, can I ask you another question about the enjoin or restrain language? So I understand we're dealing with an injunction here, but I'd like to understand the scope of the government's argument. Do you agree that this language, enjoin or restrain, would not apply to class-wide declaratory relief? We don't agree with that. We haven't briefed it in this case. It's beyond the scope of the QP, in part because, as you just noted, these cases involve injunctions. And in Aleman Gonzalez, it's actually a preliminary injunction. And so the lower courts, with the exception of the Sixth Circuit, have not been receptive to our approach on that. And the plurality in PREAP seems to say that declaratory judgments would not be covered by 1252F. But the argument that we think is a reasonable one is that other similar statutes also preclude declaratory judgments when there's little practical difference from an injunction. And a good example is the Tax Injunction Act, which we quote in our brief. This is 28 U.S.C. 1341. I already mentioned it to Justice Kagan. It says, District courts shall not enjoin, suspend, or restrain. So the phrase is very similar. It inserts one extra verb, suspend. But it otherwise says, enjoin, suspend, or refrain the collection of state taxes. And this Court has construed that provision as preventing a declaratory judgment that a state tax would be unconstitutional in Grace Brethren Church. And so if, in this context, declaratory judgment would have – would be practically similar to an injunction, and if there were class-wide declaratory relief against the government that said that with respect to every member of this class, the government is bound by a decision that the statute means X rather than not X, that that would be declaratory relief that would – would be binding on the government. It would be – it would not be an injunction. It would not be enforceable by contempt. But to the extent that it has the practical effects of an injunction, it could, as in Grace Brethren Church, be construed as being sufficiently similar to be covered here. And there are other contexts where the Court has done that. Counsel, I hate to interrupt, but your answer is giving me more concern because you're asking us to make a ruling that would possibly be completely advisory on something that, by your own admission, is very complex. If you win on the merits, wouldn't any on the question we – we added, and I agree we added it, but wouldn't it be completely advisory if we ruled on the merits in your favor? I wouldn't call it advisory. I think to the extent that this is a jurisdictional statute, the Court could say that – that – But it's not jurisdictional in the normal sense of the word jurisdictional. In – in – are you familiar with that case? Yes. You know what we said is, in a statute in which the Court limited relief, that it wasn't jurisdictional in the traditional sense that the Court is devoid of – of power over the parties or to hear the issue. It's only – it's only precluded from giving a certain form of advice. It's not jurisdictional in that sense of devoid of power to hear the case at all. Well, I don't disagree, Justice Sotomayor, that the Court could decide the merits question here and avoid having to decide the 1252-F question. I don't think that means that the Court would be precluded from reaching the 1252-F question. I think there are a couple different ways the Court could avoid the 1252-F question here. One would be if – if it ruled just on Mr. Aleman Gonzalez's claim as an individual. The other would be, even thinking of this as a jurisdictional statute, that if the Court has decided the statutory question in the companion case, then it could apply that result here. And that's – Well, one of my colleagues already suggested that there are reasons not to decide the merits in the companion case but to decide it in this case. If – if you're referring to Justice Gorsuch's reference to the question of whether somebody was detained in this case as opposed to the other case, if I could turn to that. Justice Gorsuch, the individual plaintiff here, Mr. Aleman Gonzalez, was also released on bond. And – and for the same reason, then, essentially, as the – the named plaintiff in the Third Circuit case, the respondent in the Third Circuit case, for the same reason, he, too, is not expected to have his withholding only – his next withholding only hearing is not going to be until June 2023. And again, that's because he is on the non-detained docket. As Mr. Rayner was explaining, the – the question of how quickly the immigration judges in the Executive Office for Immigration Review process cases is – is significantly affected by the question of whether the noncitizen in question is detained. And so the statistics that Mr. Rayner was talking about that are cited in the other side's brief, the study about withholding only proceedings up through 2015, those have comparatively short hearing – detention periods because they were people who were detained. And so in these cases, where the Third Circuit and the ICE are going to get bond hearings, and to the extent that they are released, they would then – their withholding only proceeding would then be put in a slower queue. And so that's what's happened here. Now, there are other class members. In – in this case, you wouldn't necessarily have to just look at Mr. Aleman Gonzalez. And so it's possible that there are – there are – there are people who've had their bond hearings and been denied, even under the bond hearing regime that the – the Ninth Circuit has required here, and therefore they could be detained. But I – I presume then that their – their withholding only proceeding would be moving more quickly. Well, I – I just wonder if you're on the merits there. This has seemed to me to be simpler than you've been suggesting and was suggested. It's not really a statutory case, say, Zadvydas. I mean, we're talking about bail. And the reason it may detain – so you can read that word, may, to read in certain conditions that long have been constitutionally required in other cases. And the reason Demore is different and the reason Rodriguez is different is it didn't use those words, which is just what the court says. Shall be detained are the words there. Shall be detained are the words there. And the reason Demore and Rodriguez thought that made a difference, shall or may. So here we deal with may. Now, that's the statutory issue. As far as the underlying issue, I mean, you know it as well as I do. Everybody gets bail hearings that you're going to detain for a significant amount of time. Every criminal case. Debtors used to in debtor prisons. Mental people being confined in hospitals have the equivalent. Extradition people get the hearings. Well, I looked at every case we could find. I didn't find any that said you don't get eventually a bail hearing when you're detained for a reasonably long length of time. And that's why Blackstone in 1771 said that the king's bench or its judges may bail in any case whatsoever. Okay. Now, you think that's not in the Constitution? The Eighth Amendment? Liberty? I mean, please. Okay, so the question is can you the really basic thing is why in heaven's name shouldn't you read that in here where it goes the detention is too long? You can say, well, we don't want to take six months precisely or we don't want to have precisely this proceeding or that proceeding. Fine. That's a reasonable argument. But given the history of this nation and Britain, where at least entitled to a bail hearing, that's all that's at issue. What do you say? Well, the first thing I would say, Justice Breyer, is that the Jennings decision discussed three different provisions, one of which included 1226A, where the phrase was may release on bond. But they had other things. It had in there the exception for a single exception only if, only if he's going to go into the witness program. All right, you can be both can read what Justice Alito wrote. He wrote a whole big thing about the may. And I read that and the other and I can make up my mind on that. So can you. Okay. Well, I recall your dissent in that case. So I. The dissent didn't go on that basis. But no, but what I was trying to say, Justice Breyer, is that 1226A is a may provision. And that was one of the provisions that the Jennings court concluded could not be construed as requiring the bond hearing requirements that had been imposed there. And the second thing I would. The second thing is not, it's not because of the word may that they concluded that. But people can go and read that for themselves. Okay. And I know that my dissent tried to make light or tried to make space to do the same thing as Advitas in other words. And I do believe I wrote what I discussed in the dissent and I discussed all of that. I was wrong. I was dissenting. So you're right about that. Go ahead. My point was just that you had made up your mind. But on the second issue of the constitutional underlying constitutional entitlement here and whether there is a right to a bond hearing the way you're saying, we do think that cases like Damore and Reno against Flores make it clear that Congress can make rules for noncitizens that it can't for citizens and that detention during removal proceedings is constitutionally permissible. Did the courts in those cases, did our court decide that? Did it decide? Did it discuss and decide the constitutional issue? It said that detention during removal proceedings is constitutionally permissible in Damore. We acknowledge that there could be as applied constitutional challenges as Justice Barrett pointed out before. And the other thing I would say is that they are getting review under the administrative procedures that we have. And so we are not saying that there is that they don't get any review. We're saying that we have come up with this regulatory framework under 241.4 and we think that that would satisfy any constitutional minimum here. That's a different point. But I want to get that first point. It is the view of the government that a right that has been in the common law and in the law of the United States, that I could find no exceptions, that you cannot be detained under our Constitution by the executive branch for too long a time, maybe it's six months or seven or eight months, without at least giving you a bail hearing. It is the position of the government of the United States that it is constitutional to cut that right off. It is our position that in this context, that detention during removal proceedings is constitutionally permissible. And that's true under 1226C. Even if they last for ten years? The provision that you were talking about where Congress made the determination as a categorical matter that certain noncitizens posed risks, as Mr. Rayner was explaining in Guzman-Chavez, the court explained that the population at issue here, people in 1231 proceedings, by definition, they have a final order of removal. They have a greater likelihood that they are going to be removed. I'm sorry to interrupt, but just a follow-up on Justice Breyer's question. The government — is it contesting? I did not understand Mr. Rayner to contest that a habeas petition seeking relief on a constitutional ground could be entertained by this Court on the basis that detention has lasted too long without sufficient explanation. Yes. I — the other thing that Mr. Rayner mentioned was that in a habeas proceeding, that the noncitizen could challenge the lack of statutory authority under Zadvadas on the assumption that if there is not a significant likelihood of removal in the reasonably foreseeable future, that that's something that the noncitizen has a statutory right to that could be considered. So there could both be a statutory claim and a constitutional claim in a habeas petition, as applied in the government's view? It could be, yes. That's very helpful. Thank you. I didn't know if there were any further questions about 1252F. We had not discussed the exception of the statute, which talks about — is what the Court has addressed three times, including in Jennings, to say that it prohibits Federal courts from granting class-wide injunctive relief against the operation of these provisions. And we do think that that was a holding in Jennings because the Court would not have needed to remand to the Ninth Circuit to consider the scope of the prohibition if the exception hadn't been made inapplicable by that assumption in this Court's opinion. And I do think that it's important that the phrase here is an individual alien. That cannot be read without making the term individual superfluous. If you just include — if you just apply it to class- I'm sorry, Counsel. In Jennings, I thought there were individuals who were not in the same category as this individual in a withholding proceedings. And so the Court was remanding because it was avoiding this very issue. The Court, in its discussion of 1252F, noted that it had obviated the statutory ground for the Ninth Circuit's decision but had remanded for consideration of the constitutional question. And therefore, the Ninth Circuit's rationale, which is the one that I was discussing with Justice Kagan earlier, couldn't support the idea that 1252F was inapplicable. But that was because the exception was inapplicable. And the other thing that I would say about the idea that a class that includes only individual aliens against whom proceedings have already been initiated should come within the exception, the reason why we think that doesn't make sense is not just because it makes an individual alien superfluous, but because these classes, in this case, they're constantly being refreshed by new members who satisfy the definition of the class. They come into the class. They get a bond hearing. They go out. And that means that, by definition, at the time the district court entered the injunction here, not all individual aliens before it were people who against whom proceedings under such part have been initiated. And therefore, the class included people to whom the individual exception didn't apply at the time the injunction was entered. Thank you, Counsel. Justice Thomas? Justice Breyer? No, thank you. Justice Alito? Justice Sotomayor? Justice Kagan? Gorsuch? I don't know. Okay. Thank you, Counsel. Mr. Adams? Mr. Chief Justice, and may it please the Court, it's a bedrock principle in our legal system that where the government seeks to lock up a human being for a prolonged period, that person is entitled to a hearing before an independent decision-maker to determine whether detention is justified. The Court of Appeals was correct to read the statute to require such a hearing for two reasons. First, the text itself, it calls for a determination to either detain or release such individuals, and it identifies the traditional bail hearing criteria for that decision. Second, constitutional avoidance requires this textual reading, as held in Zobitis. Interpreting the statute to permit the agency to lock up persons for prolonged periods at their discretion, often more than a year, without the most basic prerequisite of due process, raises serious constitutional concerns. Petitioners concede the due process clause requires a neutral decision-maker, yet they contend that ICE officers qualify as such. But just as the sheriff or prosecutor cannot decide on bail, so too an ICE officer does not qualify as the neutral or detached decision-maker, free of the competitive enterprise of law enforcement. The agency's own regulations interpret this very statute to require an adversarial hearing before immigration judges for those it seeks to detain beyond six months as specially dangerous. It follows that others detained under the same statute are entitled to similar protection against unlawful detention. Nor does 1252F1 preclude the lower courts from providing class-wide injunctions here because the court's orders did not enjoin the operation of the statute, only conduct that violated the statute. It continued to apply to all class members. I welcome the court's questions. It is notable that the statute does not require detention. Instead, it could- Go back to the jurisdictional question where you left off a couple of seconds ago. If the statute is read to mean that what a court cannot do is to enter an order that precludes the government from applying the statute, right, what is left? What is the consequence of that? It makes clear that it only enjoins attacks on the statute itself. And I think this is ill- So it would only enjoin, it would only prevent the court from entertaining constitutional challenges to the statute. Is that right? No, that's not right. You could still have a statutory challenge that seeks to trump, as it were, another provision of the statute and enjoin that statute from being applied against other individuals. But it's important to look at the- It's a very narrow class, is it not? I think so, but I think it goes along with what Congress had done with this overhaul of the judicial review. If you have two statutory provisions that seem to be in tension, the court would, first of all, try very hard to harmonize them. And I think in harmonizing the statute, it's essential to look at the neighboring subsections. In 1252A2A and in 1252E3, there Congress specified that it barred challenges not just to the operation of the statute, but to the operation and implementation of the statute. And it made clear when discussing implementation, it was discussing the policies and procedures of the attorney general to implement the statute. Do you have any examples of cases in which a court has said, you, the government, cannot apply Statute A because it has been implicitly repealed by Statute B? Yes, yes. What's an example? Durand-Gonzalez in the Ninth Circuit, a case we litigated, was a class action challenging whether the neighboring provision in 1231A5, the reinstatement orders, could be applied to a group who had already applied for adjustment of status under a separate immigration provision. And did it just say that that was the wrong provision, or did it say that a provision had been implicitly repealed? It said that the challenge was that 1255I enjoined the government from reinstating those orders unless the government first adjudicated and lawfully completed the application process for those adjustment applications. But, Mr. Adams, I presume that what's lying behind Justice Alito's question is some notion that you might be able to come up with a few cases here or there, and there might be this separate category of statute versus statute kind of litigation. But mostly, your reading of the provision is going to put constitutional questions in this court and only this court, and is going to leave application questions to the lower courts. In other words, you know, questions of, is the agency complying with the statute? That goes to the lower courts. And questions of, is the statute constitutional? That skips the lower courts and comes to us. And I guess, you know, one thing that Mr. Gannon and the government says about this is, well, isn't that weird because it disfavors constitutional review? So what's the answer to that? Well, the answer is constitutional review is still available at the lower courts. Even under the government's theory, individuals can bring those constitutional challenges, and there can still be applications for declaratory relief under the Constitution. So the lower courts still retain that authority. In addition, I would point out that this court has repeatedly affirmed the rule that where a statute may be read to infringe upon the court's equitable authority, the court assumes that it does not, absent express language, absent the clearest command. And we don't have that clear command. In contrast, you look at 1252A2. You look at 1252E3, and there Congress was explicit where it talked about challenges to implementation, to policies and procedures to determine whether they are consistent with the statute. That's precisely the type of challenge we have here. But Congress chose not to use that language in 1252F1. Instead, it only sought to limit injunctions as to the operation of the statute itself. And that is, again, we look at in Rodriguez it was instructive because it highlighted that distinction. In remanding the case to the court of appeals, it distinguished between an injunction that would enjoin the statute itself, as the remaining constitutional challenge would, as opposed to an injunction that only sought to enjoin conduct that a court had found had violated the statute. Counsel, I agree with you that when Congress wants to preclude class actions, it tends to do it so explicitly. It did so in this same statute, in 1252E1B. Yet it didn't do it here. Here it talked about individual actions, and this is much closer to the Yamakasaki case, isn't it? It is. And that goes to the second reason why 1252F1 does not apply to this case, because Congress's reference carved out the possibility for anyone who is already subjected to these detention or deportation provisions to seek injunctive relief for themselves. Now, the government seeks to limit that by referencing that exception, by referencing the individual alien phrase. But again, in Califano v. Yamasaki, this court, in another judicial review statute, made clear that a reference to the individual applicant, and even reference to case-by-case claims adjudication, is not sufficient. There must be a clear expression of Congress's intent to eliminate the default rule that class certification is available or class relief is available. And Congress did not do that here. And as Justice Sotomayor pointed out, that's illustrated amply by the fact in the neighboring subsection in 1252. So can I cut you off, because I think you've answered that part of my question, but I had a different, more important one to raise with you, which is earlier you were getting to constitutional questions as to whether the agency's procedures were adequate or not. But these cases, no one has reached the constitutional issues below, and I don't know why we should. Why don't we go back to the statutory rulings in these cases? And Justice Alito raised an important question on Vermont Yankee. Yes. Could you address that, meaning the statutory reading of both circuits, this one, the third and the ninth, is that bond hearings are required, and bond hearings are required before IJs, and the government needs to bear the burden of proof beyond a reasonable doubt. And I think that Justice Alito's question was, how does those requirements by the courts below, why don't they violate Vermont Yankee? In Vermont Yankee, this Court clarified that the government could not be required to provide additional procedural protections, but it made clear that that was absent constitutional constraints. And it clarified that without such a constitutional challenge, there was no claim to require an agency in that rulemaking posture of that case to require more. But what's important here is that the statute itself provides these rights. As this Court has construed the statute in its advidus, at the point detention becomes prolonged at six months, there must be a determination as to the reasonable foreseeability and the risk of danger. The Court in that case remanded the matter to the habeas courts to make that determination. That's essential to understand. The Court did not instruct INS officials to determine reasonable foreseeability and risk of danger. At the point detention became prolonged, the habeas court retained the authority to make that determination. And that's what we have here. We have a habeas class that was before the lower courts, two habeas classes, and those courts found that those class members are entitled to that same determination. Now, the Court itself did not conduct the bell hearing, as is often the case in habeas challenges. A federal court will grant the writ and instruct an immigration judge to conduct the bell hearing that's required, if a bell hearing is required. But what's clear from the statute, as this Court held in its advidus, is that in order to ensure that detention remains tethered to its lawful purpose, and as all agreed in its advidus, the lawful purpose was either to guard against risk to the community or failure to appear for removal. So what is required to guard against that risk? At the point detention becomes prolonged, there must be a determination as to removability or to flight risk. And that's precisely what the lower courts have ordered, a determination for each one of these individuals at the point their detention becomes prolonged, which this Court held in its advidus is at six months. Thank you, Counsel. Thank you. Importantly, the agency's procedures themselves and the regulations that provide the government's interpretation fail miserably to ensure that the statute remains tethered to its lawful purpose. They do not provide for an independent decision maker. Time and again, this Court has confirmed that when making a custody determination, because physical liberty goes to the core of the due process clause, it requires an independent decision maker. And that can't be a law enforcement officer. Now, the Court didn't question the integrity of the sheriff or prosecutor. No more than we're questioning the integrity of the ICE officials. But the point was that their law enforcement responsibilities in arresting, charging, prosecuting the removal of these individuals necessarily color the lens through which they make their own custody determination. Why don't you just make a constitutional argument? All of this sounds to me like a constitutional due process argument. In Colofano v. Yamasaki, this Court clarified that when interpreting a statute that is ambiguous but impacts a liberty interest, it assumes congressional solicitude for fair procedures, absent explicit statutory language to the contrary. And that is what we have here. We have Congress making clear that we – Yeah, okay. But you have to – under that, don't you have to identify an ambiguity in the statute? Does constitutional avoidance mean, oh, we look at this statute and we think it might be unfair as written, but we also don't want to go so far as to say that there's a constitutional right to this, so we're just going to say constitutional avoidance and say that this is in the statute already? In looking at a statute – What's the ambiguity here? The ambiguity is that Congress made clear that there must be a custody determination, either detain or release, but did not specify how that determination must be made. Now, that lack of precision must be read against the backdrop of our legal heritage that says when you're making a custody determination, you're looking at someone's physical liberty, especially with prolonged detention, it requires an independent decision maker. It requires someone who's not already involved in arresting and charging and prosecuting these individuals, and yet ICE has not provided that. They've retained the authority themselves. I'm sorry to interrupt, but on that score, I've heard that point a number of times. It resonates with me. But I would have thought that the Constitution, if it does apply, would require a truly neutral magistrate perhaps, and you keep referring to other ICE employees as neutral magistrates, and I just wonder about that. I think the important or the critical distinction is that the officials who are assigned to adjudicate the custody determinations not share the law enforcement responsibilities. That is, their responsibilities don't include involvement. And sometimes that's true in administrative agencies and sometimes it's not, right? I mean, ALJs don't share responsibilities, but other administrative judges often do and can from case to case. It's not so here, I understand, but it can be the case. Do you think the Constitution is satisfied by an immigration judge who is an employee of the Department of Justice conduct the hearings? We do think that it is satisfied by that, because the immigration judges are an independent unit within the Department of Justice that is not involved in arresting or bringing charges regarding the individuals that are before it. And ultimately, there certainly are agencies that require less for their adjudicators, but never in the context of physical liberty. Yeah, in the context of physical liberty, it's usually a good deal more. Exactly. A good deal more than an immigration judge, with all respect to those who work day in and day out in the trenches as immigration judges. It is true that it generally requires the judicial official to make that physical liberty determination. But it's also true that there's a system in place that Congress has put in place to make custody determinations in the immigration context. But, Mr. Adams, and this I think picks up on the questions that both Justice Alito and Justice Gorsuch are asking, in a 2241 proceeding, you know, if you're bringing a habeas action, you do have a judge. You have a truly neutral decision-maker, as Justice Gorsuch is suggesting, not someone who's a member of the executive branch. And kind of to Justice Alito's questions, I mean, I think Justice Alito's questions reflect the concern that some of our posted VITAS cases have articulated that you can't rewrite a statute because of avoidance questions. So at some point, the statute is either unconstitutional or it's constitutional, and you can't rewrite it to avoid constitutional problems. So let's say that we think that some of the, let's say that we think that your argument pushes that limit and is maybe asking us to rewrite the statute. Why just not bring the constitutional challenge? Is it just because to do that, you would run into the class action bar? And so maybe that's, you know, the government says that it's the class action bar that's actually causing these kind of contorted arguments of the statute. Why isn't a habeas proceeding the better way to handle this? Because this Court has already construed the statute in the VITAS to allow for a challenge to the statutory order. But put that aside, okay? I think that's what Justice Barrett's asking you to do, and I'm asking you to do at any rate. Put that aside. In the abstract, on first principles, why wouldn't that be the more natural and maybe the more efficacious route, the better route for your clients? When you speak of more efficacious, I can tell you from our own clients that bringing a habeas is in its own. I'm not saying it's easy, okay? I'm not saying it's easy. I understand that. I do. But we have had this case now before us in three different iterations, I think, since I've been here. The statutory case doesn't seem easy either, with respect. It's been up, it's been down, it's been back, and it's been forth. And, you know, just one more chance for thoughts about why not a constitutional challenge to the statutory? To be clear, there is a constitutional challenge that was brought in these actions, and there's an alternative claim that the courts did not reach because they followed this court's guidance of first addressing the statutory claims. And I don't want to push back against you, but it goes back to the VITAS because this Court had already construed it. I got that argument. Thank you, counsel. But I'd say the same question. I mean, the words in ZIT VITAS in the statute that were ambiguous was the word may, may detain. And that suggests sometimes attain, sometimes not. So what I believe the court did was read into those words may detain, read in the words that have been historically a part of not detaining someone without bail, which goes back hundreds of years. Now, that's all that happened. And so if we're going to get variations on that theme, why not say, well, when you'd have to have a hearing and who would do it and all those questions which have been part of our history, we ought to stop worrying about the language of the statute and just say there is a constitutional right to this kind of thing. You can't keep people in prison forever without a hearing, without anything. What about that? Well, we certainly believe there is a constitutional right. As I stated, both of the habeas classes brought an alternative constitutional challenge. But, again, this Court has repeatedly instructed the lower courts to address the statutory issue first. And the statutory issue here has already been addressed by this Court. And those courts followed this Court's instructions, finding that six months had been reached under the statute. PERS advidis, they were entitled to a determination, is their removal reasonably foreseeable? If not, there is a presumption of release there. But even if their removal is reasonably foreseeable, then there must be a determination. And, again, this Court instructed the habeas courts to make that determination as to whether there were factors of risk to the community that justified continued detention. Well, just to take the most obvious part of what the lower courts have held, or the part of what the lower courts have held that may stray the furthest from the word may, how do you get clear and convincing evidence out of may? I would like to make two points on that. First, the Court of Appeals in the Ninth Circuit did not rely upon the statute to make that interpretation. Instead, that derives from a separate decision, Singh, which was a constitutional finding. And for that very reason, the government disavowed raising that issue in Aleman Gonzalez in footnote three of their petition for cert. So the lower courts did not interpret the statute to require any specific burden. And where did it come from? As a constitutional requirement? As a constitutional requirement. Clear and convincing evidence is a constitutional requirement. I'm sorry. I missed the last part. The Constitution requires the clear and convincing evidence burden. That was the holding of the lower courts in Singh. And it follows cases like Addington, Sontoski, where the Court has found that in the absence of language in the statute that specifies the burden, it is the role of the Court to do that. In an illegal reentry case, the government has clear and convincing evidence burden? I'm sorry. I don't follow. Where the alien has illegally entered the country, reentered the country after removal, does the government have a clear and convincing evidence burden to show that this alien is not a flight risk? Where that person has already been found by a DHS official to have a bona fide claim for protection and is entitled under statute to seek relief because of their fear of persecution or torture and is therefore transferred before the immigration court, every single one of these individuals have those proceedings because they passed that initial screening, because they have bona fide claims, and where they're facing prolonged detention, then yes, I would confirm that the Constitution requires the government to bear that burden, as this Court made clear in Addington, because civil liberty, physical liberty is at the heart of the due process clause, and civil detention requires the government to shoulder that responsibility when dealing with this fundamental right. But again, that is a separate finding that does not go to the Ninth Circuit's statutory interpretation of the statute. And I would go back to the agency's regulations. Not only do they not provide an independent decision maker, they do not provide an adversarial hearing. Earlier, the petitioner's counsel asserted that there's an entitlement to counsel at these interviews. Well, that is wrong. Even their own regulations say that the individual may be accompanied at the discretion of both ICE and the detaining institution. So only if ICE affords you that right, and in my experience, that never happens. You're never notified that ICE is going to drop by the cell at 2.30 tomorrow afternoon to show up. That simply does not occur. There is no right to confront the evidence. If the agency has decided that you are to remain detained because you present a risk because of a burglary charge against you, you don't have the opportunity to even learn of that charge or that basis for the agency's reasoning. You don't have the opportunity to present the documents to show that that charge was subsequently dismissed. Or if they're relying on the fact that your case is on appeal, you don't have the opportunity to then confront that evidence and point out that you actually prevailed before the lower court, but now the government has appealed your case, dragging it out for another year. All of these are clear interpretations from the government that demonstrate the statute is no longer tethered to its lawful purpose. If you look at Mr. Aleman, he was denied release on custody after six months based solely on the fact that he continued to be in withholding-only proceedings. There was no individualized analysis of risk or of danger to the community, risk of flight or danger to the community. All was a rubber stamp by the same agency affirming its prior decision to keep him in custody. And indeed, the regulations themselves under 241.4D1, under the custody determination, states that even though an individual must demonstrate they are not a flight risk or a danger to the community in order to be released, that the agency retains the discretion to continue their detention, illustrating amply that their detention is no longer tethered to its lawful purpose. In vitis, both the majority and the dissent clearly agreed that the purpose of the statute was to prevent risk of flight or danger. And just as this court found that it is arbitrary to detain someone who may no longer be removed, it is equally arbitrary and unlawful to detain someone who does not present a flight risk or a danger to the community. And because of this, it is clear that the government's interpretation fails to satisfy basic constitutional concerns. And because it raises those constitutional concerns and because the text of the statute, this court's construction in vitis, and the agency's own implementing regulations demonstrate that the court of appeals construction is more than fairly possible, that construction should be affirmed. The lower courts had the authority and the responsibility under vitis to make those independent determinations at the point the individuals before them, the class members, detention became prolonged. And that does not mean they're going to get out at six months. It only indicates that they will have a neutral decision maker deciding whether in fact their detention remains tethered to its lawful purpose. In vitis, there were, up until now, we've received 756 class member bond hearings. Counsel, could you turn back to the question we asked? Because you've spent very little time on the injunction question. Yes. With respect to the injunction, I think there's three basic points as to why the lower court's injunction, and we talked about operation of the statute versus implementation. But with respect to the prior point of whether it's adding additional procedures, I would just emphasize that the court's injunction is making certain that every class member before it receives the determination that this court required in vitis. In vitis, it referred it back to the two petitioners. And every, contrary to petitioner's statements earlier, every class member is already in proceedings. Both class definitions required that those, in order to qualify as a class member, required that the individual already be subject to detention under 1231A6. And so by the express language of the statute, they qualify for that exception. Every single one of them has already suffered the brunt of the detention provision at issue and is therefore entitled to seek relief from this court. And as this court has repeatedly affirmed, unless there are clear words to the contrary or words that provide the necessary and inescapable inference, as this court said in Mitchell, it will not interpret a statute to infringe or to limit its equitable authority. And yet that is what the government is asking this court to do, to broadly read 1252F1 to limit this court's equitable authority, even though the neighboring subsections, in contrasting the language, demonstrate that Congress was not targeting class actions and that it was only targeting challenges that would impede the operation, that is, attack the statute itself, as opposed to those challenges against the policies and procedures that the Attorney General implemented purportedly to fulfill the scope of the statute. How many members are there in the class? In the Al-Aman class, we get quarterly reports, and there's been 756 bond hearings provided. There's roughly ñ there's a little less than 1,000, but not everyone gets a bond hearing because sometimes they're immediately removed after six months or it's clear their removal is imminent or they don't seek it. So there's been 756 of those class members who've received a bond. Of those ñ Well, the statute says an individual, so you think an individual covers at least 756 people? Yes, there's 756 individuals, every single one of them, who's a member of the certified class who's subject to these provisions. Thank you, counsel. Justice Thomas. Justice Breyer, anything further? No, thank you. Justice Alito. Justice Sotomayor. No, thank you. Okay. Justice Gorsuch. Thank you, counsel. Thank you. Rebuttal, Mr. Gannon. Thank you, Mr. Chief Justice. I'll start with a couple points about the 1252F question. My friend talked about another provision that he says reads on the question of what operation means, and he cited 1252A2Ai as a provision that refers to operation or implementation, suggesting that we're wrong to equate those two terms. I would point out that the phrase there is a reference to operation or implementation of an order of removal, not of the statute itself. And so I don't think the analogy is quite as clear as my friend suggests, and we do think otherwise that everything I was saying before about the scope of this provision in talking about the way the statute is applied and the fact that the exception is about application to individuals shows that we're talking about not just the statute in the abstract, but the way the statute is being implemented. Second, with respect to the exception, my friend says that every member of the class is an individual who satisfies the exception because he or she is someone against whom proceedings have been initiated. And the point that I was making before is that that was not true at the time that the injunctive relief was entered by the district court or when it was affirmed by the Court of Appeals. There are 750-some people who've come in and out of the class, and so this is a standing instruction that is renewed every time somebody satisfies its criteria, and that means that at the time the district court was entering that injunction, it was applying it to individuals who did not satisfy the exception, some future person who is going to come into being and then satisfy the definition of the class. And so I don't think that even that understanding of a class that includes only individuals for whom a court could enter relief is satisfied in these circumstances with a rolling class like that. Turning to questions on the merits, my friend mentions that everyone here is somebody who by definition has what he calls a bona fide claim. That means that there's been a reasonable fear determination, and Mr. Shah mentioned in the first argument that that's a small percentage of noncitizens who even satisfy that at 13 percent, I think is the figure that he used. And that is true, but even among that category, those are the ones who are referred to IJs for withholding only proceedings. Even within that category, in their withholding proceeding, the success rate is on the order of 11 to 25 percent, depending upon which statistics you're talking about. So there should be no assumption, we think, that these are individuals who are reasonably likely to get withholding relief and therefore to stay in the United States at the end of that proceeding. The other side also focuses on the need for an independent decision maker and had a colleague, Justice Gorsuch, about that. And I do think that it's important here that this court long ago in Marcello in the 1950s said that special inquiry officers at the Immigration Service could make deportation decisions when all of this function was still in DOJ. DOJ, INS, made the decision to put these types of post-order custody reviews before officials in INS, the officials that then later on moved on to become ICE. They did not put this function under IJs. And so the idea that they're at the same agency and therefore they can't make the decision, we don't think applies here in this context as the court has contemplated what is consistent with the tradition of our immigration laws. And the hearing here that is being had is not the Zadvydas hearing, this is not the page 700 hearing that you're hearing this quotation about the habeas court could consider danger. And that is not what is happening under the bond hearing regime ordered by the Third Circuit and the Ninth Circuit. That is not the habeas court making that determination. They have said that even though the statute says this is a decision to be made by the Secretary, the Secretary may detain if somebody satisfies one of the four categories. The courts have said no, that's a decision that needs to be made by an IJ, and it is not the habeas court that is making that decision. And to the extent that the regulations, my friend says that his client didn't get an interview, since the facts that gave rise to this case, the agency has circulated a memorandum to the field reminding everyone and reiterating the importance of the personal interview requirement. And to the extent that any individual isn't getting the procedures that are required in our regulations, that's an Acardi claim that the other side is not advancing in this case. They're making a statutory claim that we aren't complying with the statute, not that we're not complying with our regulations. And finally, I would say that on this bond hearing question, that we don't dispute that DHS and DOJ could choose to implement a decision-making process that looks more like the bond hearing regime imposed by the courts below, but that doesn't mean the statute or the Constitution compels it. We urge the court to reverse the judgment of the Court of Appeals. Thank you, Counsel. The case is submitted.